AO 106 (Rev. 04/10) Application for a Search Warrant        AUTHORIZED AND APPROVED/DATE: __EMJ 5/01/2023__

# UNITED STATES DISTRICT COURT

FILED

for the

Western District of Oklahoma



In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

2424 NW 1st Street, Oklahoma City, Oklahoma 73107 WITH ACCESS AND CONTROL OF THE DETACHED GARAGE, AND ALL APPURTENANCES, OUTBUILDINGS, VEHICLES, AND CURTILAGE

)
)
)
)
)
)

Case No.  M-23-271-STE

**1:40 pm, May 01, 2023**
CARMELITA REEDER SHINN, CLERK
U.S. DIST. COURT, WESTERN DIST. OKLA
By: Carrie James, Deputy Clerk

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, which is incorporated by reference herein.

located in the _____Western_____ District of _____Oklahoma_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, which is incorporated by reference herein.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. s. 2252A | Activities relating to material constituting or containing child pornography |

The application is based on these facts:

See the attached Affidavit of Special Agent Salazar, which is incorporated by reference herein.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Andrea Salazar, Special Agent, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:  __5/1/23__

*Judge's signature*

City and state:  Oklahoma City, Oklahoma

SHON T. ERWIN, UNITED STATES MAGISTRATE JUDGE
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR SEARCH WARRANT

I, Andrea Salazar, a Special Agent with Homeland Security Investigations ("HSI"), being duly sworn, depose and state as follows:

### INTRODUCTION

1.      I am currently employed as a Special Agent ("SA") with Homeland Security Investigations and have been so since July 2022. Prior, I was a federal police officer with Pentagon Force Protection Agency and was so employed since August 2019. I hold a bachelor's degree in Criminology and a Master of Public Administration from St. Mary's University. I also hold a Master of Science in Criminal Justice from Sam Houston State University.

2.      I am currently assigned to HSI Oklahoma City, Oklahoma. As part of my various duties and responsibilities, I investigate federal criminal cybercrime violations. As it relates to cybercrime, I have gained experience conducting child exploitation and child pornography investigations. My working experience has been augmented by training I received at the Federal Law Enforcement Training Center. Moreover, I have access to the institutional knowledge developed around this type of investigation by working with other experienced child exploitation criminal investigators. I have become aware of numerous examples of child pornography (as defined in 18 USC § 2256) in all forms of media including computer media.

3.      This Affidavit is submitted in support of an application for a search warrant for the location specifically described in Attachment A of this Affidavit: The residence of 2424 NW 1st Street, Oklahoma City, Oklahoma 73107 (the **"SUBJECT PREMISES"**) for property that constitutes: evidence of the commission of a criminal offense; contraband, the

fruits of crime, and things otherwise criminally possessed; and property designed and intended for use, and which has been used as a means of committing criminal offenses, namely, violations of 18 USC §§ 2252 and 2252A (Possession and Distribution of Child Pornography). These items are more specifically described in Attachment B of this Affidavit.

4.    The facts set forth in this Affidavit are based upon my personal observations, training, prior investigations, and, where noted, information related to me by other law enforcement officers.    Since this Affidavit is being submitted for the limited purpose of establishing probable cause to secure a search warrant, I have not included every fact known to me to concerning this investigation.

## CYBERCRIME

5.    Computers and digital technology play a large role in the way individuals interested in child pornography interact with each other.    Computers basically serve four functions in connection with child pornography:  production, storage, communication, and distribution.

6.    The commonality of digital cameras and smartphones with built-in cameras has created an environment that allows those interested in child pornography to easily produce child pornography.    Resolution of these pictures and videos are sharper and crisper than ever before.    When a photograph or video is taken with a digital camera or smartphone, it is saved as a digital file.    Digital files can then be stored in the internal memory or on a removable memory card in the camera, smartphone, or transferred to another computer device.    These memory cards often store up to 32 gigabytes of data, which provides enough space to store thousands of high-resolution photographs.

2

7.      The computer's ability to store images in digital form makes the computer itself an ideal repository for child pornography.  The size of the electronic storage media (commonly referred to as the hard drive) can store thousands of images at very high resolutions.  Hard drives, either standalone or internal, are able to hold one terabyte of information are not uncommon.  In addition, there are numerous options available for the storage of digital files.  Other media storage devices include CDs, DVDs, and "thumb," "jump," or "flash" drives, which are very small devices that are plugged into a port on the computer.  It is extremely easy for an individual to take a photo or a video with a digital camera or camera-bearing smartphone, upload that photo or video to a computer, and then copy it (or any other files on the computer) to any one of those media storage devices.  CDs and DVDs are not as instantaneous though.  They require software to save or "burn" files onto them.  Some media storage devices, like smartphones and/or mobile phones, can be easily, and are often perpetually, concealed and/or carried on an individual's person.

8.      A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection.  Electronic contact can be made to literally millions of computers around the world.  Child pornography can be transferred via email or through file transfer protocols ("FTP"s) to anyone with access to a computer and modem.  Individuals can also use online resources to retrieve and store child pornography.  Online services allow a user to set up an account with a remote computing service that provides email services as well as electronic storage of computer files in a variety of formats.  A user can set up an online storage account from any computer with access to the internet.

3

9.      The internet affords individuals several venues for obtaining, viewing, and trading child pornography in a relatively secure and anonymous fashion. For example, distributors of child pornography can use membership-based and subscription-based websites to conduct business, allowing them to remain relatively anonymous. Additionally, distributors can use file sharing software or Peer-to-Peer software ("P2P"). This P2P software allows users to share files with other users running compatible software on this P2P file-sharing network.

10.     As is the case with most digital technology, communications by way of computer can be saved or stored on the computer used for these purposes. Storing this information can be intentional (i.e., by saving an email as a file on the computer or saving the location of one's favorite websites in, for example, "bookmarked" files). Digital information can also be retained unintentionally, such as the traces of the path of an electronic communication may be automatically stored in many places (e.g., temporary files or internet service provider ("ISP") client software, among others). In addition to electronic communications, a computer user's internet activities generally leave traces or "footprints" in the web cache and history files of the browser used. Such information is often maintained indefinitely until overwritten by other data. Accordingly, a computer forensic examiner can often find evidence of deleted files on a user's computer. Thus, if a user has downloaded image files, viewed them, and then deleted them, a computer forensic examiner can often find evidence of such actions and possibly even the deleted images themselves. Even in cases where online storage is used, evidence of child pornography can still be found on the user's computer or external media in most cases.

4

## METHODOLOGY AND INVESTIGATION

11.    Millions of computer users use P2P file sharing networks to share files containing music, graphics, movies, and text.  Files shared via P2P file sharing networks are transported via the internet.  Any computer user who can connect to the internet can download P2P application software, which is typically free, and use it to share files through a P2P network.  These networks have also become a popular way to download and distribute child pornography.

12.    Most P2P programs allow users to designate specific folder(s) as "shared" folders.  Any files contained in these specific folders are then made available for download by other users on the same P2P network.  Downloaded files are stored in the area or directory previously designated by the user and/or the software.  A P2P file transfer is facilitated by reference to an Internet Protocol ("IP") address.  This address, expressed as four sets of numbers separated by decimal points, are unique to a particular computer during an "online" internet session.  The IP address identifies the location of the computer(s).  The address is associated to a specific computer making it possible for data to be transferred between different computers.  Third-party software is available to identify the IP address of the P2P computer sending the file.  Such software monitors and logs internet and local network traffic.

13.    On a P2P file-sharing network, most computers that are part of this network are referred to as "peers" or "clients," hereafter referred to as a peer.  A peer can download files from other peers simultaneously and provide these files to other peers via client software programs.    These client programs are publicly available, typically free, and can be

downloaded from the internet.

14.    Using special P2P software, law enforcement agencies access the open P2P network, query for files related to child pornography, and download of these file(s) from a suspect's peer computer.  During these downloads, information such as: the suspect peer's IP address; confirmation from the suspect peer that the peer has pieces of the file(s) being requested, in whole or in part, and that the pieces of the file(s) are being shared from the suspect peer program; and the type of network client program and version being utilized by the suspect computer.  Using this software, law enforcement can also ensure that the download(s) is a single-source download, that is, that the file was downloaded from a single computer using a particular IP address instead of getting bits of the file from multiple computers using multiple IP addresses spread out across the P2P network.

## **PROBABLE CAUSE**

15.    This case began on February 9, 2022, when Oklahoma City Police Department ("OCPD") Inspector Chris Cargill utilized an undercover computer running a program called eMule to conduct a single-source download of child sexual abuse material ("CSAM") from IP address 68.97.248.141 ("Subject IP-1").  Subject IP-1 was initially identified as a potential source of child pornography by conducting keyword and file value searches related to known CSAM, including child pornography.  The files were downloaded using a single-source program, meaning all files were completely downloaded from one IP address: Subject IP-1.  The download was recorded along with the date, time, and specific identification of each file transferred.  This means that a computer using the internet via Subject IP-1 was the source of the child pornography downloads.

6

16.    Between February 9, 2022, at 8:54:43 a.m. Central Standard Time and February 19, 2022, 1:03:39 p.m. Central Standard Time, six single-source downloads were conducted. The videos downloaded, reviewed by Inspector Cargill, contained pre-pubescent females engaged in sexual acts and/or display of their genitals.

17.    After review of the downloaded files, Inspector Cargill checked Subject IP-1 through American Registry for Internet Numbers ("ARIN"). It was discovered, through MaxMind, that Subject IP-1 geolocated to Oklahoma City, Oklahoma ISP Cox Communications.

18.    On February 22, 2022, Inspector Cargill submitted an administrative subpoena to Cox Communications for data related to Subject IP-1. Cox Communications provided a response on April 16, 2022. The response showed Subject IP-1 account had been active since May 22, 2013. The subscriber for the account was Frank Whitson at the **SUBJECT PREMISES**. Contact phone numbers of (405) 232-6439 and (405) 510-6784 were provided for the account.

19.    On May 14, 2022, Inspector Chris Cargill again utilized an undercover computer running a program called eMule to conduct a single-source download of CSAM from IP address 68.97.249.220 ("Subject IP-2"). Between May 14, 2022, at 3:06:25 a.m. Central Standard Time and May 14, 2022, 8:03:07 a.m. Central Standard Time, five single-source downloads were conducted. The videos downloaded, reviewed by Inspector Cargill, contained pre-pubescent females engaged in sexual acts and/or display of their genitals.

20.    After review of the downloaded files, Inspector Cargill checked Subject IP-2 through ARIN. It was discovered, through MaxMind, that Subject IP-2 geolocated to

Oklahoma City, Oklahoma ISP Cox Communications.

21.    On May 18, 2022, Inspector Cargill submitted an administrative subpoena to Cox Communications for data related to Subject IP-2. Cox Communications provided a response on June 24, 2022. The response showed Subject IP account had been active since May 22, 2013. The subscriber for the account was Frank Whitson at the **SUBJECT PREMISES**. Contact phone numbers of (405) 232-6439 and (405) 510-6784 were provided for the account.

22.    On June 23, 2022, Inspector Chris Cargill again utilized an undercover computer running a program called eMule to conduct a single-source download of CSAM, IP address 68.97.229.232 ("Subject IP-3"). Between June 23, 2022, at 11:05:14 p.m. Central Standard Time and September 8, 2022, at 04:07:36 p.m. Central Standard Time, seventeen single-source downloads were conducted. The videos downloaded, reviewed by Inspector Cargill, contained pre-pubescent females engaged in sexual acts and/or display of their genitals.

23.    After review of the downloaded files, Inspector Cargill checked Subject IP-3 through ARIN. It was discovered, through MaxMind, that Subject IP-3 geolocated to Oklahoma City, Oklahoma ISP Cox Communications.

24.    On September 22, 2022, Inspector Cargill submitted a summons to Cox Communications for data related to Subject IP-3. Cox Communications provided a response on October 15, 2022. The response showed Subject IP-3 account had been active since May 22, 2013. The subscriber for the account was Frank Whitson at the **SUBJECT PREMISES**. Contact phone numbers of (405) 232-6439 and (405) 510-6784 were provided for the

8

account.

25.     After receiving the information, on Subject IP- 1, Subject IP-2, and Subject IP-3, from Cox Communications, Inspector Cargill checked the Oklahoma County Assessor's Office public records and discovered the deed to the **SUBJECT PREMISES** was granted to Frank Whitson on August 4, 2003.

26.     On February 23, 2023, I met with Inspector Cargill to be briefed of the case at OCPD.  Inspector Cargill gave me all the relevant case information.

27.     On March 13, 2023, I contacted an Oklahoma State Bureau of Investigation analyst to conduct utilities checks at the **SUBJECT PREMISES**.  The record checks showed the Oklahoma Gas and Electric utilities for the **SUBJECT PREMISES** were registered to Frank Whitson.

28.     On March 14, 2023, contact was made with the United States Postal Inspection ("USPIS") to confirm that Whitson was receiving mail to the **SUBJECT PREMISES**.  On March 16, 2023, the USPIS contact confirmed that Whitson does receive mail at **SUBJECT PREMISES**.

## <u>CHILD PORNOGRAPHY COLLECTOR CHARACTERISTICS</u>

29.     Based upon my knowledge, experience, and training in child exploitation and child pornography investigations, and the training and experience of other law enforcement officers with whom I have had discussions, there are certain characteristics common to individuals involved in the receipt and collection of child pornography:

a.     Child pornography collectors usually start collecting child pornography by obtaining free images and videos of child pornography widely available on the internet on

various locations and then escalate their activity by proactively distributing images they have collected, often for the purposes of trading images of child pornography with others, as a method of adding to their own collections of child pornography.

b.      Child pornography collectors may receive sexual gratification, stimulation, and satisfaction from contact with children; or from fantasies they may have viewing children engaged in sexual activity or in sexually suggestive poses, such as in person, in photographs, or other visual media; or from literature describing such activity.

c.      Collectors of child pornography may collect sexually explicit or suggestive materials, in a variety of media, including photographs, magazines, motion pictures, videotapes, books, slides and/or drawings or other visual media.   Child pornography collectors oftentimes use these materials for their own sexual arousal and gratification. Further, they may use these materials to lower the inhibitions of children they are attempting to seduce, to arouse the selected child partner, or to demonstrate the desired sexual acts.

d.      Child pornography collectors typically retain pictures, films, photographs, negatives, magazines, correspondence, books, tape recordings, mailing lists, child erotica, and videotapes for many years. Collectors prefer not to be without their child pornography for any prolonged period of time.

e.      Likewise, collectors of child pornography often maintain their collections that are in a digital or electronic format in a safe, secure, and private environment.   These collections are often maintained for several years and are kept close by, usually at the collector's residence, to enable the collector to view the collection, which is valued highly.

10

f.      Child pornography collectors also may correspond with and/or meet others to share information and materials; rarely destroy correspondence from other child pornography distributors/collectors; conceal such correspondence as they do their sexually explicit material; and often maintain lists of names, addresses, and telephone numbers of individuals with whom they have been in contact and who share the same interests in child pornography.

**SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS**

30.      Searches and seizures of evidence from computers commonly require agents to download or copy information from the computers and their components or seize most or all computer items (computer hardware, computer software, and computer related documentation) to be processed later by a qualified computer expert in a laboratory or other controlled environment.  This is almost always true because of the following two reasons:

a.      Computer storage devices (like hard disks, diskettes, tapes, laser disks, magneto opticals, and others) can store the equivalent of millions of pages of information. Especially when the user wants to conceal criminal evidence, he or she often stores it in random order with deceptive file names.  This requires searching authorities to examine all the stored data that is available to determine whether it is included in the warrant that authorizes the search.  This sorting process can take weeks or months, depending on the volume of data stored, and is generally difficult to accomplish on-site.

b.      Searching computer systems for criminal evidence is a highly technical process requiring expert skill and a properly controlled environment.  The vast array of computer hardware and software available requires even computer experts to specialize in

11

some systems and applications, so it is difficult to know before a search which expert should analyze the system and its data. The search of a computer system is an exacting scientific procedure that is designed to protect the integrity of the evidence and to recover even hidden, erased, compressed, password-protected, or encrypted files. Since computer evidence is extremely vulnerable to tampering or destruction (which may be caused by malicious code or normal activities of an operating system), the controlled environment of a laboratory is essential to its complete and accurate analysis.

31.     To fully retrieve data from a computer system, the analyst needs all magnetic storage devices as well as the central processing unit ("CPU"). In cases involving child pornography where the evidence consists partly of graphics files, the monitor(s) may be essential for a thorough and efficient search due to software and hardware configuration issues. In addition, the analyst needs all the system software (operating systems or interfaces, and hardware drivers) and any applications software which may have been used to create the data (whether stored on hard drives or on external media).

32.     Furthermore, because there is probable cause to believe that the computer and its storage devices are all instrumentalities of crime(s) described in this Affidavit, they should all be seized as such.

## CONCLUSION

33.    Based on the above information, there is probable cause to believe the items described in Attachment B are presently located within the **SUBJECT PREMISES** described in, and set forth in Attachment A.  The digital media therein, and the items thereof constitute evidence or instrumentalities of violations of 18 U.S.C. §§ 2252 and 2252A. Accordingly, I respectfully request the Court authorize the search of the **SUBJECT PREMISES** and seize evidence and instrumentalities of the above violations of federal law and related contraband.

Andrea Salazar
Special Agent
Homeland Security Investigations

SUBSCRIBED AND SWORN before me this _____ day of May 2023.

SHON T. ERWIN
United States Magistrate Judge

13

## ATTACHMENT A
## DESCRIPTION OF PREMISES

2424 NW 1st Street, Oklahoma City, Oklahoma 73107 is a white, single-story home with off-white trim and off-white accents. The front door of the residence is white and the number 2424 in dark lettering is affixed to a white sign at the front right side of the residence's front door. The residence has a detached garage on the property inside of the fence line. This search will include all appurtenances, outbuildings, and vehicles located on the **SUBJECT PREMISES**. The **SUBJECT PREMISES** is as shown below:



14

## ATTACHMENT B
## LIST OF ITEMS TO BE SEIZED

1.      Computer(s), as broadly defined in 18 U.S.C. § 1030(e), other digital file storage devices, computer hardware, computer software, computer related documentation, computer passwords and data security devices, videotapes, video recording devices, video recording players, and video display monitors that may be, or are used to: visually depict child pornography or child erotica; display or access information pertaining to a sexual interest in child pornography; display or access information pertaining to sexual activity with children; or distribute, possess, or receive child pornography, child erotica, or information pertaining to an interest in child pornography.

2.      Any and all computer software, including programs to run operating systems, applications (such as word processing, graphics, or spreadsheet programs), utilities, compilers, interpreters, and communications programs.

3.      Any and all notes, documents, records, or correspondence, in any format and medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes) pertaining to the possession, receipt, distribution or accessing with the intent to view (or the attempt to do so) child pornography as defined in 18 U.S.C. § 2256(8), or to the possession, receipt, or distribution of visual depictions of minors engaged in sexually explicit conduct as defined in 18 U.S.C. § 2256(2).

4.      In any format and medium, all originals, computer files, copies, and negatives of child pornography, as defined in 18 U.S.C. § 2256(8), and visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

5.      Any and all notes, documents, records, or correspondence, in any format or

15

medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and handwritten notes), identifying persons transmitting, through interstate or foreign commerce by any means, including, but not limited to, by the United States Mail or by computer, any child pornography as defined in 18 U.S.C. § 2256(8) or any visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

6.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, other digital data files and web cache information) concerning the receipt, transmission, or possession of child pornography, as defined in 18 U.S.C. § 2256(8), or visual depictions of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

7.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

8.      Any and all notes, documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) concerning membership in online groups, clubs, or services that provide or make child pornography accessible to members.

9.      Any and all records, documents, invoices and materials, in any format or

16

medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

10.    Any and all cameras, film, videotapes or other photographic equipment.

11.    Any and all visual depictions of minors engaging in sexually explicit conduct.

12.    Any and all address books, mailing lists, supplier lists, mailing address labels, and any and all documents and records, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to the preparation, purchase, and acquisition of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate or foreign commerce by any means, including by the United States Mail or by computer, any child pornography, as defined in 18 U.S.C. § 2256(8), or any visual depiction of minors engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

13.    Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, e-mail messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, mail envelopes, or addressed correspondence.

17

14.    Any and all diaries, notebooks, notes, and any other records reflecting personal contact and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in 18 U.S.C. § 2256(2).

16.    All fruits, instrumentalities, and evidence, in any format or medium, of violations of 18 U.S.C. § 2252A's enumerated offenses.